COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-153-CV

IN THE MATTER OF B.M. 

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant B.M., a juvenile with severe mental and psychological problems, appeals the trial court’s judgment revoking his probation and committing him to the Texas Youth Commission (TYC).  In two grounds,
(footnote: 2) B.M. contends that the trial court abused its discretion in committing him to the TYC and that the evidence is legally insufficient to require him to register as a sex offender.  We will affirm.

II.  Factual and Procedural Background

In October 2005, a trial court adjudicated B.M., who was then fifteen years old, delinquent for indecency with a child, and placed him on two years’ probation.  The trial court’s order required that B.M. participate in an outpatient sex offender treatment program.  In April 2006, the State filed a Motion to Modify Disposition, alleging that B.M. had violated the terms of his probation and requesting that the trial court commit B.M. to the TYC.  After a hearing, the trial court found that B.M. had violated the terms of his probation as the State had alleged.  But rather than revoking his probation, the trial court ordered B.M. removed from his home and placed in the Specialized Treatment of Offenders Program (STOP), which is a long-term residential treatment program for juveniles who have committed sexual offenses.  

In January 2007, B.M. was unsuccessfully discharged from STOP, and the State filed another Motion to Modify Disposition based upon his unsatisfactory performance in the program.  In April 2007, the trial court conducted a hearing on the State’s motion, revoked B.M.’s probation, and committed him to the TYC for an undetermined amount of time.  B.M. now appeals.

III.  Order of Commitment

In his first ground of error, B.M. alleges that the “trial court abused its discretion by committing B.M. to the TYC because the decision to place was [made] without reference to any guiding rules or principles.”  

After a trial court has adjudicated a juvenile delinquent, the trial court has broad discretion to determine disposition.  
In re C.J.H.
, 79 S.W.3d 698, 702 (Tex. App.—Fort Worth 2002, no pet.).  An appellate court therefore reviews the trial court’s judgment and commitment order modifying the juvenile’s disposition under an abuse of discretion standard.  
Id.

To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.  
Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241–42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  
Id.
  An abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court’s decision.  
Butnaru v. Ford Motor Co.
, 84 S.W.3d 198, 211 (Tex. 2002).

When a juvenile court modifies a disposition by committing the juvenile to the TYC, it must determine that it is in the child’s best interests to be placed outside the child’s home; that reasonable efforts were made to prevent or eliminate the need for the child’s removal from the child’s home and to make it possible for the child to return home; and that the child, in the child’s home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation.  
Tex. Fam. Code Ann.
 § 54.05(m)(1) (Vernon Supp. 2007).

B.M. contends that the State failed to prove all three requirements of section 54.05(m)(1).
(footnote: 3)  First, B.M. argues that the State failed to present any evidence of how commitment to the TYC would serve B.M.’s best interest.  The State, B.M. alleges, should have presented evidence as to the impact that a TYC commitment would have on B.M. and the possible sex offender treatment programs available at a TYC institution.  Furthermore, B.M. contends that the record is devoid of what reasonable efforts were made to prevent or eliminate the need for B.M.’s removal from his home.  Finally, B.M. argues that the State failed to prove that B.M., in his home, could not be provided the quality of care and level of support and supervision that he needed to meet the conditions of probation.  B.M. argues that the evidence at the hearing only served to demonstrate that a locked-down, structured, and intensive program (such as STOP) was ineffective for B.M. and that no evidence suggested that the TYC would be any more effective.
(footnote: 4) 

At the April 2007 hearing on the State’s motion, the State presented the testimony of the STOP program coordinator, who said that B.M. had struggled in the STOP program—receiving 450 office referrals during the seven months he was in the program for not complying with staff instructions, being disrespectful, and refusing to complete both homework assignments for school and treatment assignments for his sexual offenses.  The STOP coordinator testified that B.M. refused to participate in the program and instead asked to be sent to the TYC.  The coordinator also noted that B.M. should not be sent back home with his mother and stepfather because the victims of his previous sexual offenses lived at the home, and, given B.M.’s lack of progress in his treatment and his psychological evaluation, B.M. was likely to re-offend.  At the same time, the coordinator testified, there were no other alternative treatment programs for B.M.  

Thus, testimony at the hearing on the State’s motion indicated that the State had initially tried probation without removing B.M. from his house, and, when B.M. unsuccessfully completed that, had tried keeping him on probation but placing him in a residential treatment center, at which B.M. was similarly unsuccessful.  TYC commitment was the only remaining option.

The State also presented the testimony of a therapist with the STOP program who had psychologically evaluated B.M. for the seven months B.M. was in STOP.  The therapist testified that B.M. posed a very high risk to the community because B.M. had sexual fantasies about both adults and children, which meant that he was more likely to commit another sexual offense.  Apart from the danger to the community, the therapist revealed that B.M.’s fantasies were about his own family, most of whom were living at his home with his mother and stepfather.  The therapist additionally testified that, based on psychological testing, B.M. showed a high risk to sexually re-offend and that, because he had not shown any progress in STOP, that it was not in the best interests of the public to release him into the community. 

Lastly, B.M.’s stepfather testified that he and B.M.’s mother had tried to comply with all of the requests made of them while B.M. was in STOP and had tried to motivate B.M. to participate in the program.  The stepfather testified that STOP had not properly accommodated B.M. because, as far as the school side of the program was concerned, the STOP teachers taught B.M. on a grade level much higher than the grade level at which B.M. functioned,
(footnote: 5) B.M. had previously suffered burns on 42% of his body, suffered from epileptic seizures, and was hearing impaired.  The stepfather opined that, from what he had heard, the TYC would not be the best placement option for B.M. but that B.M. would be better off in an outpatient program that would teach at his level.  Finally, even though the stepfather testified that B.M. would not return to his previous home but would go instead to his biological father’s home (where either his father or a babysitter would supervise him), the stepfather admitted that B.M. had previously committed a sexual offense at the biological father’s residence.

Thus, the testimony established that it was unwise for B.M. to return to the home of his mother and stepfather because victims of his crimes lived at that residence and that it was similarly unwise for him to return to the home of his biological father because he had committed a sexual offense in that home as well.  Simply put, B.M.’s family could not provide a secure location in which B.M. could live, outpatient treatment had failed, inpatient treatment had failed, and the State had no other option but confinement in the TYC. 

The record additionally reflects that B.M., who indicated that he wished he did not feel the urge to commit sexual offenses, expressed a desire to be committed to the TYC.  Additionally, expert testimony established that because of B.M.’s lack of progress and performance on psychological examinations, he posed a high risk to the community and to his family of re-offending.

Given this testimony, we cannot say that the trial court’s findings that commitment was in B.M.’s best interests, that the State had made reasonable efforts to prevent the commitment, and that B.M. could not, at any home available to him, receive the level of care necessary to meet the conditions of his probation were arbitrary or unreasonable or without reference to guiding principles.  
See 
Tex. Fam. Code Ann.
 § 54.05(m)(1); 
Butnaru
, 84 S.W.3d at 211; 
In re J.B.
, No. 02-06-00396-CV, 2007 WL 2331023, at *3 (Tex. App.—Fort Worth Aug. 16, 2007, no pet.) (mem. op.) (holding similar evidence sufficient under section 54.05(m) to support commitment); 
In re V.B.
, No. 02-06-00262-CV, 2007 WL 79518, at *3 (Tex. App.—Fort Worth Jan. 11, 2007, no pet.) (mem. op.) (same).  Accordingly, we overrule B.M.’s first ground.

IV.  Sex Offender Registration

B.M.’s second ground of error is that the evidence was legally insufficient to require him to publicly register as a sex offender. 

Pursuant to the relevant provisions of the Texas Sex Offender Registration Program, a person who has a reportable conviction or adjudication must register as a sex offender with the local law enforcement authority in any municipality where the person resides or intends to reside for more than seven days.  
Tex. Code Crim. Proc. Ann.
 art. 62.051(a) (Vernon 2006).  A “reportable conviction or adjudication” includes an adjudication of delinquent conduct based on a violation of section 21.11 of the penal code, which is indecency with a child.  
Id.
 62.001(5)(A); 
see 
Tex. Penal Code Ann.
 § 21.11 (Vernon 2003).

As an exception to this general rule, a trial court can defer its decision on whether to require a juvenile to register if the trial court determines that forcing the juvenile to register would not increase the protection of the public and that the harm that registration would cause to the juvenile and the juvenile’s family clearly outweighs any potential increase in the protection of the public.  
Tex. Code Crim. Proc. Ann.
 art. 62.352(a).  If the trial court defers its decision on requiring registration, it nevertheless retains discretion and jurisdiction to require registration at any time during the treatment or on the unsuccessful completion of treatment.  
Id.
 art. 62.352(c).  The standard of review on appeal is whether the juvenile court committed procedural error or abused its discretion in requiring registration.  
Id.
 art. 62.357(b).  B.M. challenged the basis for the decision.  We therefore treat B.M.’s ground as a complaint that the trial court abused its discretion by ordering him to register as a sex offender.  
See id.

In this case, the trial court, in November 2005, originally adjudicated B.M. delinquent for violating section 21.11 of the penal code, which is committing indecency with a child.  
See 
Tex. Penal Code Ann.
 § 21.11.  While this would normally require registration as a sex offender, the trial court was able to defer its decision on registration because B.M. was a juvenile and explicitly did so in an “Order Deferring Sex Offender Registration.” 
See id.
 arts. 62.05(a), 62.001(5)(A), 62.352(a).  In its order, the trial court correctly recited the code of criminal procedure and stated that it retained the discretion to require him to register as sex offender “at any time during the treatment or on the . . . unsuccessful completion of treatment.”  
See
 
Tex. Code Crim. Proc. Ann.
 art. 62.352(c).  

At the hearing in April 2007, the trial court heard evidence that B.M. had unsuccessfully completed STOP and that his psychological evaluations indicated a high likelihood that he would re-offend.  It was only after this testimony about how B.M. violated the terms of his probation by unsuccessfully completing both outpatient and inpatient programs, did not show any interest in successfully completing any sex offender treatment program, and was likely to continue committing sexual offenses that the trial court finally made him register as a sex offender.  Therefore the trial court did not arbitrarily act without reference to any guiding rules or principles but instead acted within its discretion.  
See 
Tex. Code Crim. Proc. Ann.
 art. 62.357(b); 
Downer
, 701 S.W.2d at 241—42; 
In re J.D.G.
, 141 S.W.3d 319, 322 (Tex. App.—Corpus Christi 2004, no pet.) (holding that the trial court did not abuse its discretion by making a juvenile register as a sex offender when the trial court heard evidence that the juvenile had unsuccessfully completed a sex offender treatment program and should be considered potentially dangerous). Accordingly, we overrule B.M.’s second ground.

V.  Conclusion

Having overruled both of B.M.’s grounds, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: WALKER, LIVINGSTON, and DAUPHINOT, JJ.

DELIVERED: January 31, 2008

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
Appellant uses the term “grounds” to describe the issues he presents on appeal, we therefore will similarly refer to his issues presented as grounds of error.

3:
B.M. appears to argue in part of his brief that the trial court also erred by ordering him into STOP in April 2006.  But the only issue properly before this court is whether the trial court erred by committing B.M. to the TYC in its April 2007 order of commitment.  
See 
Tex. R. App. P.
 25.1(b).

4:
The trial court’s judgment stated, “The Court finds it is in the child’s best interests to be placed outside the child’s home.  The Court also finds that reasonable efforts were made to prevent or eliminate the need for the child’s removal from the child’s home and to make it possible for the child to return home and the child, in the child’s home cannot be provided the quality of care and level of support and supervision that the child needs to meet the condition of probation.”  Because of this language, we do not focus on whether the trial court violated section 54.04(m)(1), which merely requires the inclusion of such language in the judgment; we only look to whether there was any basis in the record for this finding.  
See 
Tex. Fam. Code Ann.
 § 54.05(m)(1).

5:
This testimony was countered by the testimony of the STOP coordinator, who said that STOP had made accommodations so that B.M. was taught on the grade level at which he functioned and that B.M. was able to comprehend his school work assignments.